No. 71,905

STATE OF KANSAS, *Appellee*, v. MICHAEL T. CRANE, *Appellant*.

(918 P.2d 1256)

Opinion filed June 7, 1996.

*Elizabeth Seale Cateforis*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the briefs for appellant.

*Debra A. Vermillion*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, *Steven J. Obermeier*, assistant district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Michael Crane appeals his convictions of kidnapping (K.S.A. 21-3420 [Ensley 1988]), attempted aggravated criminal sodomy (K.S.A. 1992 Supp. 21-3301; K.S.A. 21-3506 [Ensley 1988]), attempted rape (K.S.A. 1992 Supp. 21-3301; K.S.A. 21-3502 [Ensley 1988]), and lewd and lascivious behavior (K.S.A. 21-3508 [Ensley 1988]). His controlling sentence is 35 years' to life imprisonment.

Crane's convictions in this case stemmed from two separate incidents on the evening of January 6, 1993. The first incident gave rise to the conviction of lewd and lascivious behavior; the second incident resulted in Crane's being convicted of kidnapping, attempted aggravated criminal sodomy, and attempted rape.

At approximately 7 o'clock in the evening of Wednesday, January 6, 1993, Crane entered a tanning salon at 129th and State Line in Johnson County, Kansas. C.H., who was 19 years old at the time,

was working there alone. C.H. showed him to one of the private tanning rooms and showed him how to use the tanning bed. Approximately 10 minutes later Crane emerged from his tanning room, went to the salon door, and stood there. When C.H. asked about his tanning, "he started making noises . . . and dropped his pants right below his genitals and had his hand around his penis and was moving it up and down." Crane started walking toward C.H. and said, "You know you want it." C.H. reached for the telephone and told Crane to get away. Crane backed up, said, "You could have had this, baby," and laughed as he walked out the door. He ran toward an alley.

Approximately 30 minutes later, Crane entered a video store at 123rd and State Line in Johnson County. B.R., who was 20 years old at the time of trial, was working there alone. When Crane first came into the store, it was full of customers. He approached B.R. and asked for her help in locating a movie called *Revenge*. B.R. checked the computer listing of the store's inventory and found that a movie by that title was shelved with new releases. As she helped him look for the movie, he moved close enough so that their arms brushed. She moved away, and he moved close again. After they had looked for the video for quite a while without success, Crane told B.R. he was going to check with his wife at the grocery store about the title of the movie and a possible alternative. There still were other customers in the store when Crane left and walked toward the grocery store. After he was gone, B.R. found the movie Crane had requested and set it on the counter.

There was at least one other customer in the store when Crane returned approximately 20 minutes later. He said the movie B.R. handed him was not the one he had in mind and asked to see the cover it came in. She showed him the cover; he looked at it and said it was not what he wanted. Crane moved off to another part of the store, saying he would look for something else. By then, he was the only customer in the store. Standing between the movie racks and a walkway, B.R. turned her attention to a movie which was playing on the television in the store.

After she had become absorbed in the movie, B.R. was lifted off the ground by Crane. B.R. kicked and screamed. Crane was car-

rying her away from the door and window at the front of the store. B.R. got her feet back on the ground; Crane "had ahold" of her shoulders and was trying to push her down, and she was fighting him. Crane had his sweatpants down, and he said, "Do you see this?" B.R. testified that Crane's exposed penis "was rather flaccid." At least three times he ordered B.R. to perform oral sex. Crane put his hands around B.R.'s neck and squeezed, still trying to force her down. B.R. said that she continued "to fight and scream and kick and shove and punch." She hit Crane in the face and kneed him in the groin. Crane was constantly edging her toward the doorway to the store's children's room. Crane pushed B.R.; she knocked movies onto the floor as she fell against the wall, and then she fell to the floor. B.R. described Crane as being "hunched over" her, and he said, "I'm going to rape you." She continued to fight and scream. She then testified that Crane "stopped all of a sudden and looked up real quick." Then Crane stood up, ran to the front of the store, jumped over the turnstile, and ran out of the store toward the grocery store. B.R. chased him out of the store, screaming and yelling at him to get out. There was no one else around. When she went back into the store, B.R. locked the front door and called 911.

Dr. William Logan, a psychiatrist, evaluated Crane and testified on his behalf. In interviewing Crane and studying his records, Dr. Logan found very strong evidence of sexual dysfunction and deviancy which was manifested primarily in exhibitionism. He testified that persons "who suffer from this particular disorder . . . want to induce some kind of shock or fear in the individual and there is also a sort of an adrenaline rush or boost of being in a dangerous situation." Dr. Logan further testified that persons who engage in exhibitionism sometimes need to escalate their behavior beyond just exposing themselves in order to get the shocked or fearful response they want. Dr. Logan knew of two incidents in 1986 when Crane had touched women, in addition to exposing himself, and then fled. He testified that for some persons the progression from pure exhibitionism to more shocking behavior may continue, but for others it will not. Because exhibitionism typically is a release from built-up stress, it can be episodic rather than

progressive. Dr. Logan described it as voluntary but "a bit like an addiction." He testified that persons who engage in exhibitionism sometimes are and sometimes are not sexually aroused while exposing themselves, "[b]ut very frequently they will use the experience as a masturbatory fantasy later on."

Crane first argues that his right to speedy trial, pursuant to K.S.A. 22-3402, was violated. He relies on the following chronology:

| | |
|---|---|
| Arraignment | March 10, 1993 |
| Notice of intent to rely on insanity defense | April 6, 1993 |
| Order to transport Crane to Larned State Hospital for evaluation | April 16, 1993 |
| Report received from Larned State Hospital | July 2, 1993 |
| Defense continuation for independent evaluation | August 4, 1993 |
| Report received from independent evaluation | December 20, 1993 |
| Trial began | February 28, 1994 |

The State would add the following dates from the interval between receipt of the report from the independent evaluation and the beginning of trial:

| | |
|---|---|
| State filed motion for continuance for purpose of obtaining another evaluation | January 4, 1994 |
| Continuance granted | January 11, 1994 |

K.S.A. 22-3402 provides, in part:

"(1) If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within ninety (90) days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3).

. . . .

"(3) The time for trial may be extended beyond the limitations of subsections (1) and (2) of this section for any of the following reasons:

(a) The defendant is incompetent to stand trial;

(b) A proceeding to determine the defendant's competency to stand trial is pending and a determination thereof may not be completed within the time limitations fixed for trial by this section."

In *State v. Maas*, 242 Kan. 44, Syl. ¶ 1, 744 P.2d 1222 (1987), the court stated:

"The filing of notice of intent to rely on the insanity defense, pursuant to K.S.A. 22-3219, operates as a waiver by the defendant of the requirements of the speedy trial statute (K.S.A. 22-3402) *insofar as any such trial delay was reasonably occasioned by and attributable to the assertion of the insanity defense*." (Emphasis added.)

On appeal, Crane concedes that the time from April 6, 1993, when he filed notice of his intent to rely on an insanity defense, until July 2, 1993, when the report from his evaluation at Larned State Hospital was received are not chargeable to the State. He also agrees that the time from August 4 to December 20, 1993, is not chargeable to the State. On August 4, Crane was granted a continuance for the purpose of obtaining an independent evaluation from Dr. Logan. Dr. Logan's report was received on December 20, 1993. By the time Dr. Logan's report was received, 60 days which Crane contends are chargeable to the State already had elapsed since his arraignment. Crane contends that all the time which elapsed between the December 20, 1993, receipt of Dr. Logan's report and the beginning of trial on February 28, 1994, is chargeable to the State. His contention includes the delay after January 11 even though it was occasioned by the State's obtaining an evaluation of Crane's mental condition from Dr. Hippe. The total, according to Crane, is 130 days chargeable to the State.

It does not appear from the record that Crane filed the initial request for evaluation. Instead, the question of evaluation arose at a hearing on the State's motion to admit evidence of prior wrongdoing which was held on April 16, 1993. The State called three witnesses whose testimony was about prior incidents the State wanted to introduce to prove criminal intent. Following the testimony, the district court expressed the opinion that its admissibility might depend on the evaluation of Crane's mental state. When the trial court had asked at the beginning of the hearing whether there

were matters in addition to the evidence of prior wrongdoing which should be taken up, the prosecutor responded:

"The only other thing I believe would be in regards to the notice filed by the defendant in regards to his intent to assert the defense of insanity, allowing a defense of mental disease or defect. I am assuming the Court will want to issue appropriate orders in that regard with regard to a mental examination."

The trial court asked what needed to be done, and the prosecutor answered that "the Court will need to designate the place where that mental examination will take place." The court took the State's evidentiary motion under advisement pending Crane's evaluation and ordered that he be "transported to the state hospital at Larned for purposes of a mental examination." In any case, the parties agree that the time chargeable to Crane as delay occasioned by his anticipated insanity defense begins on April 6, 1993. At that time, 27 days had passed since Crane's arraignment.

It is further agreed that the report from Larned State Hospital was received on July 2, 1993. A period of time chargeable to the State was initiated by receipt of the report. See *State v. Prewett*, 246 Kan. 39, 42, 785 P.2d 956 (1990); *State v. Warren*, 224 Kan. 454, Syl. ¶ 4, 580 P.2d 1336 (1978). The State's clock was stopped on August 4, 1993. On that date, the district court granted Crane's request for continuance so that he could obtain an independent evaluation by Dr. Logan. Thirty-three days passed between July 2 and August 4, 1993.

It was not until December 20, 1993, that Dr. Logan's report was received. On January 4, 1994, the State asked that the January 18 trial setting be postponed. The continuance sought and obtained by the State in January 1994 was primarily for the purpose of having Crane examined and evaluated by a doctor of the State's "choosing." After being assured by the prosecuting attorney that "there are no issues about speedy trial because that has been waived," the trial court granted the continuance over defense counsel's objection in order to allow the State to have Crane examined by its expert.

Thus, the defendant agrees that on December 20, 1993, 60 days chargeable to the State had elapsed. Seventy additional days passed

before trial began on February 28, 1994. Crane argues that the entire 70-day period is chargeable to the State.

The State contends first that the entire period should be charged to Crane and, second, that at the most only the time from January 11 to February 28, 1994, is chargeable to the State. The reason offered by the State why its clock would not be restarted on December 20 with the receipt of Dr. Logan's report is that the jury trial already had been set over to January due to Dr. Logan's slowness. No record reference is given by the State to support its factual assertion. The motion for continuance filed by the State on January 4, 1994, makes the following reference to the case being set over another time: "Prior to completion of defendant's second evaluation (November 15, 1993), the matter was set for jury trial." The certified copy of the appearance docket at the beginning of the first volume of the record on appeal shows that the case was called for hearing each month during the pendency of Dr. Logan's examination. The November entry in the appearance docket states: "11/15/93 . . . Case called for hearing court #1. Plf appears by M Whitman. Def appears, in custody in person with counsel J Donham. —Next hearing in court #1 01/10/94 at 8:30 a.m. for trial." We also know from the trial court's statement on January 11, 1994, that, as of that date, "[t]his matter was set with regard to the trial setting in this matter for next Tuesday [January 18, 1994]."

Following receipt of Dr. Logan's report, the State filed on January 4, 1994, a motion for continuance. The motion contains the assurance that "[t]here is no prejudice to the defendant as the defendant has waived his speedy trial rights in this matter to pursue the defense of insanity." A notice that a hearing on the motion will be held on January 11 accompanies the motion.

At the January 11 hearing on the motion for continuance, the prosecutor introduced the subject: "[W]e would ask the case be continued from next Tuesday [January 18, 1994]." The State's motion was granted, and the case was given "a go setting for a continued jury trial . . . on February 28th." Trial actually did begin on February 28, and it may be inferred that sometime before that date, Dr. Hippe's report was received. The record does not indicate when his report was received. At a hearing on February 16, the

prosecutor told the trial court judge that she expected Dr. Hippe's report to be completed by her scheduled meeting with him on February 21.

It is Crane's position that the district court abused its discretion in granting the State's January 1994 request for a continuance. The premise from which he develops his arguments is that the State already had the Larned report which concluded that Crane was not insane. Thus, he argues, delay of trial for the purpose of obtaining another evaluation favorable to the prosecution was not necessary. Nor was that delay of trial "reasonably occasioned by and attributable to the assertion of the insanity defense," as contemplated in *Maas*, because the State could have had its own second evaluation conducted and reported during the 4-½ month delay occasioned by the defense-requested evaluation, the argument continues.

The argument made on behalf of Crane has little merit:

"Judicial discretion implies the liberty to act as a judge should act, applying the rules and analogies of the law to the facts and situations which occur prior to and during the trial. [Citation omitted.] Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court." *McKissick v. Frye*, 255 Kan. 566, 577, 876 P.2d 1371 (1994).

In *State v. Warren*, 224 Kan. 454, Syl. ¶ 4, the court stated:

"The time between the date on which a defendant files a motion for a psychiatric examination, and the date on which the report of the psychiatrist is received, is chargeable against the defendant, whether the purpose of the examination is to determine competency to stand trial or to support an insanity defense."

The time for the State to obtain a reciprocal expert report should also be bounded by the State's request and the receipt of the report.

Here, as in *Maas*, the argument is made that the defendant should not be charged with such a delay because it was not his "fault" as within the meaning of the statute. Maas had filed his notice to rely on insanity defense on December 5, 1985, and the report of the State's second expert was filed on March 27, 1986. The court rejected the argument in *Maas*, and we do so here. In *Maas*, this court said:

"The reports of the State's experts were filed by March 27, 1986. Based upon the undisputed evidence contained in the record, we have concluded that the delays occasioned by the psychiatric evaluations by both parties were reasonably attributable to the assertion of the insanity defense and properly chargeable against the defendant.

"The trial court properly considered the factual circumstances, thus the period of delay from December 5, 1985, to March 27, 1986, was reasonably attributable to the assertion of the insanity defense in accordance with *State v. Topham*, 231 Kan. 167, Syl ¶ 1 [, 642 P.2d 986 (1982)]." 242 Kan. at 51.

Here, there were 15 days between December 20, 1993, and January 4, 1994, the date the State filed its motion for continuance, which is chargeable to the State. That makes a total of 75 days chargeable to the State.

In addition to the showing that the court's action was contrary to that of any reasonable person, Crane also must show " 'substantial prejudice before an appellate court will find an abuse of discretion by the trial court.' " *State v. Grissom*, 251 Kan. 851, 931, 840 P.2d 1142 (1992) (quoting *State v. Stallings*, 246 Kan. 642, 646, 792 P.2d 1013 [1990]). In the present case, he has shown neither. In particular, he has not shown how the trial court's granting the State's request for postponement of the trial substantially prejudiced his case. Once the request for continuance was made, the clock stopped against the State and, since the request was granted, the clock did not restart until Dr. Hippe's report was received on February 21. The 7-day period between receipt of the report on February 21 and trial on February 28 is chargeable to the State, for a total of 82 days. The trial court did not err in denying Crane's motion to dismiss based upon a denial of speedy trial under K.S.A. 22-3402.

Crane next contends the trial court erred in allowing the victim to be present during the readback of her testimony. During its deliberations, the jury requested that a portion of B.R.'s testimony be read to them. The trial court decided that all, rather than a part, of her testimony should be read back. Just before the court reporter began reading, defense counsel asked to approach the bench, and the following discussion was had out of the hearing of the jury:

"MR. DONHAM: Judge, since this is kind of deliberations, is it appropriate to have the victim in the courtroom?

"MS. VERMILLION: It's an open courtroom. It's not deliberations. They're re-listening to the evidence, it's not—

"MR. DONHAM: We normally would go back in the jury room and do this. Something like this should occur in the jury room and we should go back in there for the readback, but they requested to come out here and it just occurred to me, what if, for instance, she starts to cry again?

"THE COURT: I think the law specifically requires this be done in open court in front of everybody, unless everybody waives their attendance. And so I think that is the usual way to do it. And I think they are entitled to be here and if there is something distracting to that that goes on, that would be dealt with."

After part of B.R.'s testimony had been read, defense counsel again asked if he could approach the bench. This time he objected to continuing the readback on the ground that the court reporter was having difficulty reading her notes, which might result in inaccuracies. The balance of B.R.'s testimony was read. The jury resumed its deliberations at 7:30 p.m. on March 2, 1994, and returned verdicts of guilty on all counts before leaving the courthouse that evening.

On March 7, Crane appeared before the district court judge along with defense counsel for the purpose of "plac[ing] something on the record that happened in the course of the jury deliberations in this matter." The following remarks of defense counsel were recorded:

"Just for the record, I'd like to state that during that portion of the deliberation where the transcript was being read back to the jury that [B.R.] was in the courtroom at the time, she became distraught and began weeping again and progressed to full-blown crying. And she got up and went out of the courtroom where she could be heard outside in the hall sobbing.

"After she calmed down apparently, I noticed some of the jurors were looking back at the doors, which have glass windows, and I looked over and [B.R.] was standing outside of the doors where she was crying and her husband then got up and was embracing her while she cried.

"And I just stepped over to the District Attorney's table and asked either Ms. Bachofer or Ms. Vermillion to ask them to please step away from the view of the jurors and I just wanted that to be on the record."

The State urges this court to refuse to consider this issue: "Defendant never objected before the read-back, never moved for a

mistrial after the read-back, never raised the issue in a motion for new trial, and cannot now be heard to complain for the first time on appeal." In his reply brief, Crane cites *State v. Bowman*, 252 Kan. 883, 887-88, 850 P.2d 236 (1993), for this court's rule that an objection need not be made in any particular prescribed form in order to preserve an issue for appellate review. In *Bowman*, defense counsel argued against introduction of certain evidence on the ground that it was not relevant. On appeal, the State asserted that defendant failed to preserve the issue for appeal because the discussion in which defense counsel characterized the evidence as irrelevant "did not constitute an objection." The court disagreed: "We have reviewed the record on appeal and are satisfied defense counsel's statements to the trial court sufficiently lodged his opposition to the introduction of this evidence even though he did not use the words 'I object.' " 252 Kan. at 888.

*Bowman* involves an objection to the admission of evidence, which by statute requires a specific and contemporaneous objection. K.S.A. 60-404. This court also generally precludes appellate consideration of nonevidentiary issues which have not first been presented to the trial court. But neither the time nor the manner in which nonevidentiary issues are presented to the trial court has been rigidly adhered to. The purpose of requiring the objection is to allow the trial court to correct an error, if one occurred.

In the present case, the point raised on appeal centers on the victim's presence and conduct during the readback of her testimony. Crane is not complaining about matters governed by K.S.A. 22-3420(3), the content of the readback, or the manner of the trial court's response to the jury request. Thus, Crane's counsel had adequately raised the issue in the trial court, and we are not precluded from considering the question on appeal.

Crane urges the court to read the statute as expressly authorizing only defendant and his or her counsel to be present during a readback. The plain language of the statute, however, does not support this construction. The statute requires that defendant and counsel be given the opportunity to attend the readback, but it neither requires nor implies that any other persons should be excluded from the proceeding. In fact, designation of "the court" as the

location of the readback seems to imply that an open proceeding was contemplated by the legislature. This is the meaning which the statute has been given in a case involving an ex parte communication between the trial court judge and a juror. *Crease v. State*, 252 Kan. 326, 333, 845 P.2d 27 (1993). The court stated that there was no dispute that the ex parte communication violated Crease's constitutional right to be present at all critical stages of the trial because the court has held that a conference between a trial judge and juror is a critical stage of the proceeding. 252 Kan. at 333. In addition, the court stated: "K.S.A. 22-3420(3) requires that once the jury has begun deliberations, any questions from the jury concerning the law or evidence pertaining to the case must be answered in *open* court in the defendant's presence, unless the defendant is absent voluntarily." (Emphasis added.) 252 Kan. at 333.

Anticipating an argument centering on victims' rights, Crane contends that the codified list of court proceedings from which attendance cannot be barred does not include jury-requested readbacks. K.S.A. 1995 Supp. 74-7335 provides, in part:

"(a) The victim of a crime or the victim's family shall be notified of the right to be present at any public hearing . . . concerning the accused or the convicted person . . . .

. . . .

"(c) As used in this section: (1) 'Public hearing' means any court proceeding or administrative hearing which is open to the public and shall include but not be limited to the:

(A) Preliminary hearing;
(B) trial;
(C) sentencing;
(D) sentencing modification;
(E) public comment sessions, pursuant to K.S.A. 22-3717, and amendments thereto;
(F) expungement hearing; and
(G) granting of probation or parole by a judge."

This is the basis of Crane's insistence that a jury-requested readback is part of jury deliberations rather than part of trial. Crane has no basis, however, for treating the two as separate and independent proceedings. It is contrary to common sense to define a trial so that it is over before a verdict or other conclusion has been

reached, and, in a jury trial, the deliberative process by which the verdict is reached necessarily is a component of the trial.

The most forceful argument Crane makes is that the victim's display of emotion during the readback was tantamount to introducing additional evidence of B.R.'s emotional trauma after the close of the evidence. Crane also likens the display of emotion to a communication between the victim/witness and each individual juror.

Rules applicable and analogous in this court's review of this issue were stated in *State v. Myers*, 255 Kan. 3, Syl. ¶ 1, 872 P.2d 236 (1994): "Under K.S.A. 22-3420(3), a trial court must accede to a jury's request to read back testimony. The manner of acceding to the request is subject to trial court discretion." The questions posed by Crane are whether the trial court abused its discretion in permitting B.R. to be present for the readback and, if not, whether the trial court abused its discretion by not removing her once she began crying. Crane has offered no authority for initially excluding B.R. from the courtroom during the readback, and he is in no position to be complaining about her remaining in the courtroom after she began crying. No request to remove B.R. from the jury's presence was made to the trial court after she began crying, and she left the courtroom of her own accord. When she remained within the jury's view outside the courtroom doors, defense counsel chose to handle the matter by speaking to the prosecutor. At the suggestion of the prosecutor, it seems, B.R. moved out of sight.

Having the jurors witness an emotional collapse by the victim during deliberations should be avoided where possible. In this case, her distress might have been obscured somewhat if, at the outset, defense counsel had suggested how to minimize its impact on the jurors. The victim's right to be present in the courtroom is subject to reasonable rules of conduct applied by the trial court in its management of the trial. Thus, in the circumstances of this case, we find there is no abuse of the district court's discretion.

We next consider if the amended complaint was jurisdictionally defective. The amended complaint against Crane states the following for Counts II and III:

"COUNT II—Further, that on or about the 6th day of January, 1993, in the City of Leawood, County of Johnson and State of Kansas, MICHAEL T. CRANE did then and there unlawfully, feloniously and willfully commit an overt act, to-wit: expose his penis to [B.R.] and demand she engage in sodomy with him toward the perpetration of the crime of Aggravated Criminal Sodomy as defined by K.S.A. 21-3506 with the intention to commit said crime but failed in the perpetration thereof or was prevented or intercepted in the execution thereof, in violation of K.S.A. 21-3301 and K.S.A. 21-4501(c).

"COUNT III—Further, that on or about the 6th day of January, 1993, in the City of Leawood, County of Johnson and State of Kansas, MICHAEL T. CRANE did then and there unlawfully, feloniously and willfully commit an overt act, to-wit: expose his penis to [B.R.] and tell her he was going to rape her toward the perpetration of the crime of Rape, as defined by K.S.A. 21-3502 with the intention to commit said crime but failed in the perpetration thereof or was prevented or intercepted in the execution thereof, in violation of K.S.A. 21-3301 and K.S.A. 21-4501(c)."

These allegedly defective counts were the subjects of Crane's post-trial motions for arrest of judgment. Crane followed the procedure prescribed by this court:

"The proper post-trial procedure for a defendant to follow in asserting a contention that either an information does not charge a crime or that the trial court was without jurisdiction of the crime charged is to file a motion for arrest of judgment under K.S.A. 22-3502. If the court did not have jurisdiction, or if the information did not charge a crime for which the defendant was convicted, the defendant is entitled to a determination of that condition at the trial court level." *State v. Sanford*, 250 Kan. 592, Syl. ¶ 2, 830 P.2d 14 (1992).

In one motion for arrest of judgment, Crane argued that the attempted rape conviction should be set aside because the amended complaint omitted mention of the essential elements, " 'nonconsensual' and 'overcome by force or fear.' " In the other motion, he argued that the attempted aggravated criminal sodomy conviction should be set aside for the same omissions and because the elements of sodomy were not listed. The district court found that the amended complaint sufficiently set out the elements of the offenses in Counts II and III. The district court also expressed the opinion that the jury was properly charged and instructed.

The parties agree that appellate review of this issue is unlimited. They are in partial agreement that the rationale of "pre-*Hall* cases" governs in cases such as the present one where the trial court was

given the opportunity to consider the sufficiency of the amended complaint. In *State v. Hall*, 246 Kan. 728, Syl. ¶¶ 12, 13, 793 P.2d 737 (1990), the court established a prospective rule for appellate review of information defect challenges raised for the first time on appeal. Although the State seems to suggest that *Hall* should be applied to Crane's complaints that the victim's age and gender are not mentioned in Counts II and III because they are raised for the first time on appeal, split consideration seems unnecessarily complicated. Crane seems to mention the victim's age and gender only as additional factors tending to demonstrate the insufficiency of the amended complaint.

K.S.A. 1992 Supp. 21-3301(a) provides: "An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." Counts II and III of the amended complaint reflect 21-3301(a). In Count II, Crane was charged with the overt act of exposing his penis to B.R. and demanding that she engage in sodomy with him. He is charged with committing the overt act with the intention to commit aggravated criminal sodomy, but failing. In Count III, Crane was charged with the overt act of exposing his penis to B.R. and telling her he was going to rape her. He is charged with committing the overt act with the intention to commit rape, but failing.

The problem with the way the offenses were charged in Counts II and III, according to Crane, is that the State failed to specify the elements of the offenses he was charged with attempting. Because rape and aggravated criminal sodomy each may be committed in several quite different ways, Crane argues, he was not made aware of the nature of the crimes against which he had to defend. The relevant statutes provided:

"(1) Rape is sexual intercourse with a person who does not consent to the sexual intercourse, under any of the following circumstances:
(a) When the victim is overcome by force or fear;
(b) when the victim is unconscious or physically powerless; or
(c) when the victim is incapable of giving consent because of mental deficiency or disease, which condition was known by the offender or was reasonably apparent to the offender; or

(d) when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance administered to the victim by the offender, or by another person with the offender's knowledge, unless the victim voluntarily consumes or allows the administration of the substance with knowledge of its nature.

"(2) Rape is a class B felony." K.S.A. 21-3502 (Ensley 1988).

The definition of sodomy is "oral contact or oral penetration of the female genitalia or oral contact of the male genitalia; anal penetration, however slight, of a male or female by any body part or object; or oral or anal copulation or sexual intercourse between a person and an animal." K.S.A. 21-3501(2). Aggravated criminal sodomy is:

"(a) Sodomy with a child who is not married to the offender and who is under 16 years of age;

"(b) causing a child under 16 years of age to engage in sodomy with any person or an animal; or

"(c) sodomy with a person who does not consent to the sodomy or causing a person, without the person's consent, to engage in sodomy with any person or an animal, under any of the following circumstances:

(i) When the victim is overcome by force or fear;

(ii) when the victim is unconscious or physically powerless;

(iii) when the victim is incapable of giving consent because of mental deficiency or disease, which condition was known by the offender or was reasonably apparent to the offender; or

(iv) when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance administered to the victim by the offender, or by another person with the offender's knowledge, unless the victim voluntarily consumes or allows the administration of the substance with knowledge of its nature.

"(2) Aggravated criminal sodomy is a class B felony." K.S.A. 21-3506 (Ensley 1988).

Crane seems to rely most heavily on *Sanford*, 250 Kan. 592. There, the court stated:

"In Kansas, all crimes are statutory and the elements necessary to constitute a crime must be gathered wholly from the statute. An information which omits one or more of the essential elements of the crimes it attempts to charge is jurisdictionally and fatally defective, and a conviction based on such an information must be reversed. See *State v. Jackson*, 239 Kan. 463, Syl. ¶ 4, 5, 721 P.2d 232 (1986).

"We have held that the citation to the statute cannot substitute to supply a missing element of the charge. Incorporation by reference cannot be implied or inferred. It must be explicit. *Jackson*, 239 Kan. at 466. A proper instruction does

not remedy the defect in the complaint. *State v. Howell & Taylor*, 226 Kan. 511, 513, 601 P.2d 1141 (1979).

"In *Hall*, the failure of the complaint to allege that Hall took control of the cattle with the intent to *permanently* deprive the owner of its possession rendered the complaint fatally defective. Hall's conviction of theft, under K.S.A. 21-3701, was reversed. 246 Kan. at 747. (A detailed analysis of our pre-*Hall* cases is set out at 246 Kan. at 758-59.)" 250 Kan. at 601.

Thus, in *Sanford* and *Hall*, the court stated and applied the rule that an information which omits one or more essential elements of an offense it purports to charge is jurisdictionally defective. In the present case, the complaint seems to sufficiently charge attempt, but omits the essential elements of the offenses Crane is charged with attempting to commit. Neither *Sanford* nor *Hall* addresses the question whether omission of the essential elements of the attempted offense renders the information or complaint jurisdictionally and fatally defective.

In *State v. Cory*, 211 Kan. 528, 533, 506 P.2d 1115 (1973), the court stated:

"In alleging an attempt to commit a crime if such attempt is sufficiently charged under the statute it is not additionally necessary to set forth all essential elements of the crime attempted but not consummated. In the crime of an attempt some elements of the completed crime attempted are of necessity lacking."

Crane would distinguish *Cory* on several grounds. He contends that elements of the offense Cory was charged with attempting to commit were alleged as the overt acts, which is not true for Counts II and III against Crane. According to Crane, "the overt acts alleged in this case are not elements of the crime of aggravated criminal sodomy or rape." He also contends that proper jury instructions were a factor considered by this court in concluding that the charge against Cory was not jurisdictionally defective but, since then, proper instructions have been held not to remedy a defective information. *State v. Howell & Taylor*, 226 Kan. 511, 513, 601 P.2d 1141 (1979).

The pertinent charge against Cory was stated as follows:

" '. . . (O)ne Charles Edgar Cory did then and there unlawfully, feloniously '[Count I omitted.]

'COUNT II: in perpetration of the crime of burglary as defined by K.S.A. 21-3715, commit the following overt act, to-wit: cut through a window bar and force open a window of the Modern Jewelry, 1118 Military, Baxter Springs, Kansas, with the intention to commit said crime, but failed in the perpetration thereof and was intercepted in executing said crime by Charles Sharp, Deputy Sheriff, Cherokee County, Kansas.' " 211 Kan. at 531.

The "crime of burglary includes the entering of a building without authority." 211 Kan. at 532. The alleged overt acts—cutting a window bar and forcing the window open—were measures taken in order to gain entry to the jewelry store.

Crane would contrast the charges against him in which the overt acts alleged with respect to attempted aggravated criminal sodomy were exposing himself to B.R. and demanding she engage in sodomy with him. The crime of aggravated criminal sodomy as it read at the time of the alleged offense herein included any combination of the following:

oral contact of the female genitalia
oral penetration of the female genitalia
oral contact of the male genitalia
anal penetration of a male by a body part
anal penetration of a male by an object
anal penetration of a female by a body part
anal penetration of a female by an object
oral copulation between a person and an animal
anal copulation between a person and an animal
sexual intercourse between a person and an animal
involving a child under 16 years of age
involving a person who does not consent
   who is overcome by force or fear
   who is unconscious or physically powerless
   who is incapable of giving consent
      due to mental deficiency or disease
      due to the effect of alcohol or drugs
      known to the offender
      reasonably apparent to the offender.

Crane's point is well taken. Count II of the complaint provided him with little more than the elements of attempt and the name

of the offense he was charged with attempting. This concern was discussed by the Court of Appeals in *State v. Snyder*, 10 Kan. App. 2d 450, 457-58, 701 P.2d 969 (1985):

"The purpose of the information in a criminal case is to advise the accused and the court of the charges alleged to have been committed and the essential facts constituting the crime charged. *State v. Carpenter*, 228 Kan. 115, 612 P.2d 163 (1980). In a felony action, the information is the jurisdictional instrument upon which the accused stands trial. An information must be stated with enough clarity and detail to inform a defendant of the criminal act with which he is charged. *City of Altamont v. Finkle*, 224 Kan. 221, 579 P.2d 712 (1978). The failure to so inform the defendant denies the defendant procedural due process and violates his right to be informed of the charges against him. K.S.A. 22-3205; Kansas Const. Bill of Rights, § 10; U.S. Const., 6th Amend.; *State v. Daniels*, 223 Kan. 266, 573 P.2d 607 (1977)."

Even if the essential elements of the offense defendant is charged with attempting do not have to be meticulously enumerated in the complaint, as stated in *Cory*, the charge must advise defendant of the offense he is alleged to have attempted to commit.

Here, Crane was alleged to have exposed himself and demanded that B.R. engage in sodomy with him. As he points out, the victim's age is not stated nor is it stated whether she consented and, if she did not consent, what the circumstances were. It did not state what act Crane demanded B.R. engage in, nor did it state her gender.

Although it is a less dramatic example than Count II, Count III of the amended complaint suffers the same shortcomings. Count III provided Crane with the elements of attempt and the name of the offense he was charged with attempting. None of the elements of rape is described in the count; the alleged overt acts of exposing himself and telling B.R. he was going to rape her are not elements of rape.

In *Hall*, the court reversed defendant's conviction of theft in Count II of the complaint on the ground that it failed to allege that the intent was to *permanently* deprive the owner of his cattle. 246 Kan. at 746-47. The court's ruling was made despite the following circumstances:

"There can be little doubt of what the State intended to charge in Count II. The theft statute was specifically mentioned. However, we have held that an information which omits one or more of the essential elements of the crime it attempts

to charge is jurisdictionally and fatally defective and a conviction on that offense must be reversed. *State v. Wilson*, 240 Kan. 606, 607, 731 P.2d 306 (1987). The information does not charge theft in Count II. Our past precedent requires a reversal as to Count II." 246 Kan. at 747.

We must therefore reverse Crane's convictions as to Count II, attempted aggravated sodomy, and Count III, attempted rape.

Crane next complains that the trial court abused its discretion in denying his motion for mistrial. Immediately before trial began, defense counsel announced that defendant would not assert an insanity defense. Defense counsel told the court at that time that Dr. Logan had found evidence of a dissociative disorder in Crane which did not always affect him, but which prevented him from differentiating right from wrong when it was active. It appears that the theory of insanity which defense counsel had contemplated asserting would have been that Crane was "in the grip of that dissociative disorder" at the time of the alleged incidents.

During the testimony of Officer Scott Hansen of the Leawood Police Department, the prosecuting attorney asked him to tell the jury about his interview of Crane after defendant was arrested on January 6. Officer Hansen testified that Crane described waking from a nap at approximately 3 p.m., watching some television, and then remembering nothing about the intervening period until he was arrested. Defense counsel objected to testimony about the blank spot in Crane's memory on the ground that "[i]t puts us in the position of not being able to answer this without getting into a dissociative disorder, which opens up the door into another defense." Defense counsel asked the trial court to declare a mistrial. The prosecuting attorney responded that the evidence was admissible because it was the defendant's statement to police. The trial court overruled the objection and denied the motion for mistrial.

Defense counsel did not claim to be surprised by Officer Hansen's testimony about Crane's statement to him. In fact, it is conceded that he "was aware of the contents of Officer Hansen's report." Defense counsel, however, did not object when the prosecuting attorney asked Officer Hansen to relate to the jury "the responses Mr. Crane made to you that night." It was only after the

witness had testified about Crane's statement that defense counsel interposed an objection.

The State's next question was, "Did Mr. Crane indicate to you whether or not he had any memory or recollection of the events that had occurred that night?" Defense counsel did not object. Officer Hansen answered:

"No. After he said he didn't recall anything until he was standing on the curb with the officers we talked at length about that situation. And he said he has had a previous history of these type of blackout periods and in fact he had been arrested for these types of incidents in the past. And he didn't feel he was responsible for those incidents because of those blackouts."

Again at the bench, defense counsel renewed the motion for mistrial. In response, the trial court said, "I guess the only thing that concerns me is the prior incidents." Defense counsel asked the rhetorical question, "Did you or did you not order us to avoid this issue?" The trial court judge remarked:

"Well, I don't think the issue that he blacked out or claimed to have blacked out is the same issue as claiming an insanity defense. I think what he said to an officer in a statement is admissible independent of whether or not an insanity defense is raised.

"But there is a little trouble about the comment of any prior incidents. But I'm going to go ahead and allow it."

Crane views this issue as a matter of prosecutorial misconduct so that the question for this court is the trial court's failing to declare a mistrial rather than its allowing the introduction of evidence over objection. The parties agree that it is a matter entrusted to the discretion of the trial court. The decision will not be disturbed on appeal absent a showing of abuse of discretion. *State v. Cahill*, 252 Kan. 309, 314, 845 P.2d 624 (1993). In order to prove an abuse of discretion on appeal, Crane must show that he was substantially prejudiced by the court's refusal to grant a mistrial. *State v. Pioletti*, 246 Kan. 49, 65, 785 P.2d 963 (1990).

Defense counsel announced that the insanity defense would not be pursued. In her opening statement, the prosecuting attorney stated that Crane was interviewed by Officer Hansen and Crane had told him that he blacked out and had no memory of anything after 3 p.m. At the conclusion of the State's opening statement,

defense counsel stated the following grounds for a mistrial: "We have talked about the fact we weren't going to talk about the blackouts. That is plainly putting evidence out there that shouldn't be out there." To which the trial court asked: "Why wouldn't his statement to the police be admissible?" Defense counsel offered two reasons—it was taken out of context and the prosecutor made "it sound like he manufactured some hokey thing to tell the police." The trial court expressed the opinion that Crane's "statement to the police would be admissible whether there is an insanity defense or not." The State's position on appeal echoes the trial court's reasoning.

The basic reasoning for admitting the statement is that it is defendant's statement, which he has offered no sound reason for excluding. Taking part of the statement out of its context might call for restoration of context, but would not be a reason for excluding otherwise admissible evidence. Likewise, Crane's complaint that the prosecutor made "it sound like he manufactured some hokey thing to tell the police" is not a legal basis upon which evidence should be excluded. The complaint is not that the statement was distorted.

With regard to evidence of prior criminal incidents, Crane's argument why its introduction was prosecutorial misconduct seems to be that when the insanity defense was withdrawn, the State agreed not to refer to prior crimes. The State argues that its position at trial is being misrepresented. Before trial, the State filed a motion seeking admission of evidence of Crane's being convicted of two earlier sexual assaults. The State proposed to introduce the evidence detailing the earlier assaults for the purpose of refuting Crane's insanity defense by showing his intent and knowledge and absence of mistake. Thus, when the insanity defense was withdrawn, the State no longer had reason to call the victims of the earlier attacks and stated its intention not to pursue introduction of the "60-455 evidence." The State contends that Crane's statement to police in which he incidentally mentions the prior incidents is an entirely separate matter from the evidence which had been the subject of its K.S.A. 60-455 pretrial motion.

This appears to be an instance in which defense counsel could have anticipated Officer Hansen's testimony about the prior incidents, but did not. Once the jury had heard about prior crimes, defense counsel did not request a limiting instruction. In light of defense counsel's failing to prevent or minimize the impact on the jury, the trial court did not abuse its discretion in denying a mistrial. Moreover, Crane has failed to show that the conduct complained of amounted to prosecutorial misconduct.

The final issue raised by Crane is sufficiency of the evidence to support his conviction of kidnapping. K.S.A. 21-3420 (Ensley 1988) provided:

> "Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:
> (a) For ransom, or as a shield or hostage; or
> (b) To facilitate flight or the commission of any crime; or
> (c) To inflict bodily injury or to terrorize the victim or another; or
> (d) To interfere with the performance of any governmental or political function."

Crane was charged under subsection (b) or, in the alternative, subsection (c). This court has stated the following rules with respect to crimes charged in the alternative, as the kidnapping offense was charged in the present case:

> "In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means." *State v. Timley*, 255 Kan. 286, Syl. ¶ 1, 875 P.2d 242 (1994).

" 'In reviewing an alternative means case, the court must determine whether a rational trier of fact *could* have found each means of committing the crime proved beyond a reasonable doubt.' " 255 Kan. at 289 (quoting *State v. Kitchen*, 110 Wash. 2d 403, 410, 756 P.2d 105 [1988]).

It is Crane's contention that there was insufficient evidence to support the charge of kidnapping to facilitate the commission of crime under 21-3420(b). In *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), the court stated:

"Our kidnapping statute, K.S.A. 21-3420, requires no particular distance of removal . . . . Under that statute it is the fact, not the distance, of a taking . . . that supplies a necessary element of kidnapping." Syl. ¶ 7.

"The word 'facilitate' in K.S.A. 21-3420 means something more than just to make more convenient. A taking . . . , in order to be said to 'facilitate' a crime, must have some significant bearing on making the commission of the crime 'easier.' " Syl. ¶ 9.

"If a taking . . . is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement . . . :

(*a*) Must not be slight, inconsequential and merely incidental to the other crime;

(*b*) Must not be of a kind inherent in the nature of the other crime; and

(*c*) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection." Syl. ¶ 10.

This example was given by the court to illustrate the difference between movement of a victim which did not constitute kidnapping and a taking within the meaning of the kidnapping: "The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is." 219 Kan. at 216.

Crane concedes that B.R. was picked up and moved. According to B.R.'s testimony, Crane was moving her toward a separate room. Crane argues, though, that the movement was insufficient to support conviction under subsection (b). The factors he urges the court to consider are as follows:

Crane and B.R. remained in the store, and the store was open for business.

B.R. was not removed to a place of seclusion.

If it had been Crane's intention to remove B.R. to the seclusion of the separate room, he could have done so.

Crane did not confine B.R. when he left the video store.

The movement was inherent in the other crimes charged.

The State contends that this case and *State v. Zimmerman*, 251 Kan. 54, 833 P.2d 925 (1992), are factually indistinguishable. Zimmerman was convicted of entering an apartment, hitting D.Y. on

the head, and dragging her from the living room with a sliding glass door into the laundry room. There, the court concluded that a rational factfinder could find beyond a reasonable doubt that defendant moved the victim to a place of seclusion, thereby substantially lessening his risk of detection. 251 Kan. at 59. Here, Crane moved B.R. away from the front of the store and toward a separate room. The distinction, as defendant points out, is that he did not succeed in moving B.R. into the separate room. Crane did not take or confine her in the separate room, and his intent to do so is based solely on B.R.'s assumption.

Crane's contention that the movement was inherent in the underlying offenses is true with respect to his pushing her down; however, picking B.R. up and moving her toward the back of the store where the children's room is located is questionable.

The cases relied on by Crane are *State v. Fisher*, 257 Kan. 65, 891 P.2d 1065 (1995); *State v. Hays*, 256 Kan. 48, 883 P.2d 1093 (1994); and *Buggs*. This court has termed *Buggs* "[t]he leading case on what is required to be proven to establish the facilitation of the commission of any crime provision of K.S.A. 21-3420(b)." *State v. Richmond*, 250 Kan. 375, 377, 827 P.2d 743 (1992). In *Buggs*, a woman and her son were confronted as they left work at the Dairy Queen. Defendants Buggs and Perry forced the victims to go back into the store, where they took the day's receipts from the victim's purse. Then Perry held what was believed to be a gun on the son while Buggs raped the woman at knifepoint. The risk of detection was substantially lessened when the victims were moved from outside to inside the restaurant, and the confinement facilitated commission of robbery and rape. Thus, the court rejected the argument that the movement and confinement of the victims was only incidental to the robbery. 219 Kan. at 209-17. In *Hays*, the victim was held against the wall of her hallway by a man with a crowbar while three other men took computer equipment and other items from the house. The State argued that the victim could have hindered the robbers or fled if she had not been confined. The court concluded that the evidence was insufficient to support a conviction

for kidnapping because the victim was not moved, the confinement was incidental to and inherent in the nature of the robbery, and the confinement had no significance independent of the robbery. 256 Kan. at 63. In *Fisher*, in order to get the key to open the floor safe, the owner and manager of a restaurant walked "through the waitress station, down a hallway, and through the kitchen to the office," followed by one of the gunmen. 257 Kan. at 66. After obtaining the key, they returned to the front of the restaurant, defendant unlocked the safe with the key, and the robbers left with the money from the safe. The court reversed the convictions for aggravated kidnapping of the owner and kidnapping of the manager on the following grounds:

> "The movement of Spears and Traffas neither made the crime substantially easier of commission, nor did it substantially lessen the risk of detection. The forced direction of Spears and Traffas through the restaurant was merely for the purpose of convenience, not to make the crime substantially easier of commission. It was more convenient to have Traffas and Spears, who knew where the key to the safe was located, obtain the key rather than the robber alone looking for the key and rather than attempting some other means of entry into the safe. Moreover, Spears and Traffas were not forced to remain in the back office, out of sight of any passersby, to lessen the risk of detection; rather, they returned to the front of the store. Indeed, while one robber walked with Spears and Traffas to the office, the one who remained in the front area of the store with the other victims was fully visible through the window of the restaurant. (The officer responding while the robbery was taking place observed the other robber through the window.)" 257 Kan. at 78.

In this case, evidence which might support the kidnapping conviction is very thin. Testimony about the layout of the video store was provided by B.R. and the store owner. Testimony about what happened and where was provided solely by B.R. During her testimony a diagram of the store was used, but it does not seem to be in the record on appeal. There are some slides of the store in the record on appeal. In addition to seeing the diagram and slides, the jurors saw photographs and were taken to the video store. Using the diagram, B.R. showed where Crane first grabbed her and where she was when he ran from the store.

The evidence contained in the record on appeal suggests that Crane's moving B.R. was inconsequential. Nor did it have signifi-

cance independent of the other crimes in that it did not substantially lessen the risk of detection. If Crane had moved her into the separate room, the risk of detection would have been lessened. They did not go into the separate room, although B.R. testified that Crane intended to take her into the children's room and that she foiled his intention by struggling to free herself. B.R. was making an assumption that Crane intended to take her into the children's room. Even if the jurors reasonably could have inferred from the evidence other than B.R.'s assumptions about Crane's intentions and motivations that Crane was trying to remove her from the main room of the store, he did not succeed. The movement did not make the alleged offenses of attempted aggravated sodomy or attempted rape substantially easier. In fact, the alleged acts constituting those crimes occurred while Crane was moving B.R. toward the rear of the store. Nor did the movement lessen the risk of detection since, at all times, B.R. was not concealed from view. The movement was incidental to the commission of the alleged crimes. Not only was B.R. not bound or concealed, but when Crane suddenly stopped and ran, B.R. testified, "I was so angry that I chased him out of the store screaming and yelling at him to get out. And I chased him out and I came back in and I locked the door and I called 911 at that point." Thus, there is not sufficient evidence to support the conviction of kidnapping.

The defendant's conviction of lewd and lascivious behavior is affirmed. The defendant's convictions of kidnapping, attempted aggravated sodomy, and attempted rape are reversed.