(124 P.3d 1035)

No. 92,413

STATE OF KANSAS, *Appellee*, v. MICHAEL J. BROWN, *Appellant*.

Opinion filed December 23, 2005.

*Rick Kittel*, assistant appellate defender, for appellant.

*Kim W. Cudney*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., GREENE and BUSER, JJ.

BUSER, J.: In November 2003, Michael J. Brown was convicted by a jury of involuntary manslaughter while operating a vehicle under the influence of alcohol (K.S.A. 2004 Supp. 21-3442) and driving under the influence of alcohol (K.S.A. 2004 Supp. 8-1567[a][2]). Brown appeals his convictions and sentences. We affirm in part, reverse in part, vacate the sentence, and remand for resentencing.

## *Factual and Procedural Background*

On the evening of April 15, 2003, Clay Stauffer was driving westbound on Highway 36 in Washington County when he noticed headlights approaching from the south on an intersecting road. Stauffer saw the car make a wide turn into the westbound lane of Highway 36 heading east. Stauffer attempted to brake and swerve around the car, but as he swerved to the left, the passenger side of his vehicle collided with the passenger side of the other vehicle. Stauffer was driving about 65 miles per hour when the "big collision" occurred and his car's air bags deployed.

Following the collision, Stauffer spoke to the occupants of the other car. The driver of the vehicle was Michael Brown. Brown's wife, Ruth Brown, and their son, Chase Brown, were passengers.

Washington County Sheriff Bill Overbeck, Deputy Larry Wenzl, and Deputy Scott Miller were dispatched to the scene. When Wenzl arrived he found Brown and his son standing beside their vehicle. Brown told the deputy he was not injured but his son had an injured leg and his wife, who remained in the car, was injured. Wenzl talked to Ruth, who told him her stomach hurt, and he observed a laceration on her chin. Wenzl provided emergency care for Ruth until medical personnel arrived.

Wenzel spoke to Brown about the collision. During this conversation, Wenzl noticed Brown's eyes were bloodshot and he smelled of alcohol. Both Wenzl and Miller observed a bucket in the backseat of Brown's car containing three unopened beer cans. Miller

also seized an open beer can from the side of the road, 5 to 7 feet away from Brown's vehicle.

Brown was transported by ambulance to the Washington County Hospital, along with his wife and son. Wenzl spoke with Brown again at the hospital. Brown told the deputy he was heading north on a gravel road and pulled onto Highway 36, where he was struck by a car he did not see. Brown admitted he had consumed three beers between 3 p.m. that afternoon and the time of the accident. At Wenzl's request, Brown provided a blood sample to determine whether Brown's blood alcohol level was in excess of the legal limit. A Kansas Bureau of Investigation laboratory test later revealed that Brown had a blood alcohol level of 0.10 grams of alcohol per 100 milliliters of blood.

Ruth was treated at Washington County Hospital by a family practice physician, Dr. David Hodgson, who conducted a series of clinical examinations, medical tests, and procedures. The following morning, Ruth's condition began to deteriorate and she was airlifted to Bryan West Hospital in Lincoln, Nebraska. Following surgery by Dr. Ronald Jex that afternoon to repair a tear in her aorta, Ruth's condition worsened and she died that evening.

Brown was charged with involuntary manslaughter while operating a vehicle under the influence of alcohol or drugs, driving under the influence of alcohol, transporting an open container of an alcoholic beverage, and a traffic infraction for improper turning. Following a jury trial, he was convicted of involuntary manslaughter while operating a motor vehicle while under the influence of alcohol and driving under the influence of alcohol. Brown was sentenced to a total of 162 months' imprisonment. He filed a timely appeal.

### Speedy Trial

On appeal, Brown argues the district court erred in denying his motion to dismiss for violation of his right to a speedy trial because while he was in custody he was not brought to trial within 90 days of his arraignment, in violation of K.S.A. 22-3402(1).

In particular, we are confronted with the question of how much delay is properly attributable to Brown due to his motion for con-

tinuance of jury trial following arraignment. The question of whether there is violation of Brown's statutory right to speedy trial is a matter of law over which an appellate court has unlimited review, especially if the facts are undisputed. *State v. Davis*, 277 Kan. 309, 330, 85 P.3d 1164 (2004).

The facts in this case are undisputed. Brown was in jail pending trial. He was arraigned on June 4, 2003. He pled not guilty, and a trial date was set for August 20, 2003. On July 30, 2003, Brown filed a motion for continuance of the jury trial. In support of his motion Brown claimed: "Counsel needs additional time to retain expert witness to testify on the defendant's behalf." Two days later, on August 1, 2003, the court heard and granted Brown's motion and set a new trial date of October 27, 2003.

On October 27, 2003, the court notified defense counsel that the county attorney had fallen ill and the trial would be continued. On November 6, 2003, the court held a hearing to discuss rescheduling the trial for a second time. On November 7, 2003, a telephone conference call was held and a new trial date of November 20, 2003, was set by the court. On both November 6, 2003, and November 7, 2003, the county attorney advised the court there were no speedy trial concerns.

On November 13, 2003, the defendant filed a motion to discharge for violation of the defendant's speedy trial rights. The court denied the motion. The case proceeded to trial on November 20, 2003.

Under the speedy trial statute, K.S.A. 22-3402(1), a defendant held in custody solely by reason of a criminal charge must be brought to trial "within ninety (90) days after such person's arraignment on the charge . . . unless the delay shall happen as a result of *the application* or fault of the defendant . . . ." (Emphasis added.)

A defendant waives his or her statutory right to a speedy trial by requesting or acquiescing in the granting of a continuance, and a defense counsel's actions are attributable to the defendant in calculating speedy trial violations. *State v. Bloom*, 273 Kan. 291, 310, 44 P.3d 305 (2002); *State v. Southard*, 261 Kan. 744, 748, 933 P.2d 730 (1997).

The specific issue for our consideration is whether the delay after Brown's motion to continue was granted is attributable to him. Although, as the authorities discussed below show, there is a further question whether the time between the filing of the motion to continue and the ruling is also attributable to Brown, that question was not presented by the parties and we need not reach it under the facts of this case.

Brown argues he should only be charged with the delay from the initial trial date (August 20, 2003) until the rescheduled trial date (October 27, 2003). Under this theory, Brown was incarcerated 101 days from the date of arraignment until commencement of jury trial in violation of his right to a speedy trial.

The State counters that Brown should be charged with the delay from the time his motion for continuance of jury trial was granted (August 1, 2003) until the rescheduled trial date (October 27, 2003). According to the State's theory, Brown was incarcerated awaiting trial only 82 days from the date of arraignment until commencement of the jury trial in full compliance with his right to a speedy trial.

Our Supreme Court has addressed the speedy trial ramifications of delays attributed to a defendant's application or fault in a variety of contexts. For example, in *State v. Southard*, 261 Kan. 744, the Supreme Court approved the trial court's ruling in attributing all the time between arraignment and a motions hearing to the defendant because defense counsel requested a hearing date for potential motions. The Supreme Court noted that the clause in K.S.A. 22-3402(1) pertaining to delays caused by the application or fault of the defendant included a reasonable time for the parties to brief issues and the court to decide them "as part of the delay resulting from defendant's filing a motion." 261 Kan. at 749. Moreover, even if the defense never filed any motions during that interim, the time was chargeable to the defendant because the court was accommodating the defendant. 261 Kan. at 749-50.

In other cases, the Supreme Court has attributed delays to the parties based upon the date a motion for continuance was filed. See *State v. Crane*, 260 Kan. 208, 215-16, 918 P.2d 1256 (1996) (State filed a motion for continuance requesting independent men-

tal examination after defense expert's report on defendant's insanity defense; because the State's need for examination was caused by defendant's insanity defense, time from the State's motion for continuance until State's expert's report was filed was chargeable to defendant); *City of Dodge City v. Downing*, 257 Kan. 561, Syl. ¶ 2, 894 P.2d 206 (1995) (delay caused by filing of motion to suppress is charged to defendant; calculated from time motion was filed to the time the court has had a reasonable period to rule on the same); *State v. Bafford*, 255 Kan. 888, 892-93, 879 P.2d 613 (1994) (charging the State for time between the time defendant is found to be competent to stand trial and the date the defendant filed a motion for continuance).

Brown cites *State v. Hines*, 269 Kan 698, 7 P.3d 1237 (2000), in support of his position that the original trial date is controlling in counting time for speedy trial purposes when a defendant applies for a continuance of trial. *Hines* is unavailing as precedent, however, because the language cited dealt with a different subsection, K.S.A. 22-3402(3)(c), which is now found in K.S.A. 2004 Supp. 22-3402(5)(c), and markedly different case facts.

The present case is factually distinguishable from *Hines*. As characterized by our Supreme Court, *Hines* was a case wherein "the defendant requested no continuances, and none of the delays in bringing him to trial was by reason of his application or fault." 269 Kan. at 702. Unlike *Hines*, in the present case, the defendant specifically applied for and received an almost 3-month continuance of trial to retain an "expert witness to testify on the defendant's behalf."

Secondly, the case at bar is distinguishable from *Hines* because our Supreme Court did not interpret the relevant subsection at issue, K.S.A. 22-3402(1), which specifically relates to trial delays attributable to "the application or fault of the defendant." To the contrary, our Supreme Court observed in *Hines* that a "substantial portion" of the delay in bringing Hines to trial "was based upon a court-ordered continuance under K.S.A. 22-3402(3)." 269 Kan. at 702. This delay of almost 3 months was occasioned because "[o]n the first trial date of January 25, 1999, the State was granted a continuance under K.S.A. 22-3402(3)(c) to obtain material evi-

dence." 269 Kan. at 703. Significantly, subsection (3) contained the following language that is not found in subsection (1): "Not more than one continuance may be granted the state on this ground, unless for good cause shown, where the original continuance was for less than ninety (90) days, and the trial is commenced *within one hundred twenty (120) days from the original trial date*." (Emphasis added.)

In summary, *Hines* addressed a factual and legal scenario wherein the State (not the defendant) was granted a continuance of trial based upon an entirely different statutory subsection (which contains language specifically referencing "the original trial date" not found in relevant subsection [1] of the speedy trial statute). Those are not the facts or the law relevant here, and the same could be said for *State v. White*, 275 Kan. 580, 67 P.3d 138 (2003) ("We hold that the 90-day period *under K.S.A. 22-3402[3][c]* is counted from the date of the trial setting, not from the date on which the motion was granted." [Emphasis added.]).

Considering these authorities and facts of the present case, several reasons compel our conclusion that Brown's right to a speedy trial was not violated. First, the statutory language in K.S.A. 22-3402(1) refers to delays attributable to "the application or fault" of the defendant, while K.S.A. 22-3402(3)(c) refers to continuances for specific reasons and specific time periods "from the original trial date." Accordingly, there is a reasonable basis to conclude that the Kansas Legislature did not intend delays attributable to different causes to be counted in the same manner. Second, the Supreme Court has consistently ruled, in a variety of factual contexts, that delay occasioned by a defendant's application for a continuance under K.S.A. 22-3402(1) is attributable to the defendant and, therefore, excludable when counting time for statutory speedy trial purposes. Third, there is no explicit language in *Hines*, *White*, or the more recent case of *State v. Davis*, 277 Kan. 231, 233-34, 83 P.3d 182 (2004), that intimates, let alone instructs that our Supreme Court's counting of days in interpreting subsection (3)(c) applies to subsection (1) of the speedy trial statute.

In overruling Brown's motion for discharge, the trial court stated: "The initial continuance was at the behest of defendant.

Because the continuance was sought by defendant it seems logical that the time chargeable to defendant should be from the time his motion was granted (August 1, 2003) to the continued trial date (October 27, 2003)." We agree.

Where a defendant claims that his or her statutory right to a speedy trial under K.S.A. 22-3402(1) has been violated, any delay caused by the judge granting the defendant's motion to continue the jury trial is the result of the application of the defendant. Pursuant to K.S.A. 22-3402(1), the delay from the date the judge granted Brown's motion for continuance of trial until the rescheduled trial date was chargeable against the defendant for speedy trial purposes. As a result, we hold that Brown's right to a speedy trial pursuant to K.S.A. 22-3402(1) was not violated.

## Challenge for Cause

On appeal, Brown contends the district court committed reversible error when it overruled his objection and refused to strike a prospective juror for cause. Brown did not exercise a peremptory challenge to remove the prospective juror.

Our standard of review is well settled. A trial judge is in a better position than an appellate court to view the demeanor of prospective jurors as they are questioned. *State v. Manning*, 270 Kan. 674, 691, 19 P.3d 84 (2001). As a result, "[a] trial judge's ruling on a challenge for cause will not be disturbed unless it is clearly erroneous or an abuse of discretion is shown. [Citation omitted.]" *State v. Doyle*, 272 Kan. 1157, 1166, 38 P.3d 650 (2002). Moreover, the failure to excuse a prospective juror for cause is not a ground for reversal unless the defendant was prejudiced as a result. *State v. Heath*, 264 Kan. 557, Syl. ¶ 17, 957 P.2d 449 (1998).

During voir dire, the trial court asked the jury panel members if they had any personal knowledge of the alleged crime or personal relationship with any of the parties. A potential juror, J.F., responded:

"[J.F.]: When the defendant was being held in the local jail the sheriff called me to counsel him because he wasn't eating. And I spent some time with him in that situation.

"THE COURT: Okay. Was there any discussion of the facts of the case?

"[J.F.]: Yes, sir.

"THE COURT: All right. Well, because of that personal relationship, I think that would preclude you from serving, unless you felt you could put that aside and serve.

"[J.F.]: I don't think it would necessarily affect me. But I think the Court should be aware of that or the attorneys in charge be aware of that.

"THE COURT: What your responsibility would be would be to set that aside. That wouldn't be proper discussion in the jury room.

"[J.F.]: No.

"THE COURT: And you would decide it based solely on the evidence presented here today?

"[J.F.]: That would be my responsibility, yes.

"THE COURT: And also just going a little bit further, the defendant has no responsibility, no obligation to testify. And if he chose not to testify the jury cannot, by reason of that, draw an inference that he had something to hide or that he should have gotten up and told the story. The burden is solely on the state to prove that. So again, if there was anything in that regard, it would be—you understand that would not be—

"[J.F.]: Certainly. I—whatever he shared with me there was between him and my role as pastor. It wouldn't—my thinking anyway—affect my judgment of the evidence.

"THE COURT: All right. And you do—and just so it's clear, you would be—and all the jurors would be—sitting in judgment in this case. In other words, they would have to make a judgment whether the defendant was guilty or not guilty.

"[J.F.]: Correct."

In response to questioning by the prosecution J.F. indicated, "As I stated to Judge earlier, I was called to the Washington County Detention Center to do some counseling with the defendant for—when he was first arrested."

Finally, during defense counsel's questioning of the jury panel, J.F. was again questioned:

"MR. HICKMAN: I don't see any hands. And [J.F.], the—if I understood you correctly, you had counseled Mr. Brown sometime shortly after this incident occurred. Is that correct?

"[J.F.]: Yes, sir.

"MR. HICKMAN: All right. And I believed you said—without going into any actual details—that you—he had discussed with you some facts of the case; is that correct?

"[J.F.]: From his perspective, yes.

"MR. HICKMAN: Okay. Now [J.F.], if it came about that Mr. Brown did not testify today or tomorrow or did not testify at the trial, would you be able to set

aside, to ignore the information that you learned from him in your deliberations and in reaching a verdict here today?

"[J.F.]: I believe so. I think what he said in that situation was said under the duress of his own mourning, so—kind of a different situation than what we have here.

"MR. HICKMAN: Your Honor, I'm going to ask—in light of the fact that he's received personal—has personal knowledge, that he has talked with the defendant prior to this, that he has knowledge of the facts of the case from the defendant himself, that I would ask the Court to excuse [J.F.] for cause.

"THE COURT: This prospective juror has previously stated clearly that he can separate the two and could decide the case in an objective manner. The motion to disqualify is denied."

After passing the remainder of the jury panel for cause, the State and Brown each exercised eight peremptory challenges. Neither party exercised a peremptory challenge to strike J.F. and, as a result, he served on the jury.

At trial, Brown asked the court to strike J.F. because "he has knowledge of the facts of the case from the defendant himself." In his motion for a new trial, Brown simply argued the juror should have been dismissed for cause.

On appeal, Brown now argues the court erred in refusing to strike J.F. under two subsections of K.S.A. 22-3410. First, he argues the juror should have been dismissed under subsection (2)(g) which allows a juror to be challenged for cause if he or she was "a witness to the act or acts alleged to constitute the crime." K.S.A. 22-3410(2)(g). Second, he argues J.F. should have been dismissed under subsection (2)(i) which allows a juror to be challenged for cause when "[h]is state of mind with reference to the case or any of the parties is such that the court determines there is doubt that he can act impartially and without prejudice to the substantial rights of any party." K.S.A. 22-3410(2)(i).

K.S.A. 22-3410(2)(g) provides that a prospective juror may be challenged for cause if he was "a witness to the act or acts alleged to constitute the crime." Brown candidly concedes "there is no indication [in] the record that [J.F.] was present at the scene on April 15, 2003 when Michael Brown was involved in the automobile accident that is central to this case." Brown presents the novel argument, however, that "as a person who had information regard-

ing the substantive facts of the case, information that came directly from one of the parties in the case, [J.F.] could have been considered a witness."

Brown's argument runs afoul of the plain and ordinary meaning of the words in this statutory section. "When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed . . . . [Citation omitted.]" *Williamson v. City of Hays,* 275 Kan. 300, 305, 64 P.3d 364 (2003). Moreover, in the interpretation of statutes, ordinary words are to be given their ordinary meaning. *GT, Kansas, L.L.C. v. Riley County Register of Deeds,* 271 Kan. 311, 316, 22 P.3d 600 (2001).

K.S.A. 22-3410(2)(g) only applies to eyewitnesses—witnesses to the act or acts that constitute the criminal conduct for which the defendant is on trial. In the present case there was no evidence that J.F. observed Brown at or about the time of the collision. Given that the provisions of K.S.A. 22-3410(2)(g) were inapplicable to J.F.'s knowledge of certain facts relating to Brown, the trial court did not abuse its discretion in failing to dismiss J.F. pursuant to this subsection.

Brown further contends the trial court erred in not striking J.F. from the jury panel pursuant to K.S.A. 22-3410(2)(i), which allows a juror to be challenged for cause when "[h]is state of mind with reference to the case or any of the parties is such that the court determines there is doubt that he can act impartially and without prejudice to the substantial rights of any party." See *State v. Doyle,* 272 Kan. 1157, 1166, 38 P.3d 650 (2002). In particular, Brown "simply asserts that, despite [J.F.]'s protestations to the contrary, his state of mind was indelibly affected by his jailhouse conversation with Mr. Brown so as to create a real doubt that [J.F.] could act impartially and without prejudice to Mr. Brown's substantial rights."

Brown's speculative claim is without any factual basis and directly contradicted by the record testimony wherein J.F. repeatedly assured the trial court that he understood it would be improper to consider the pretrial conversation he had with Brown, and that it would be his responsibility to only consider the evidence presented in court. As a result, there was a solid factual basis for the trial

court's finding that J.F. "has previously stated clearly that he can separate the two and could decide the case in an objective manner."

There are no facts in the record to support a conclusion that J.F. exhibited any partiality or prejudice which disqualified him from jury service. Moreover, J.F.'s sworn testimony was to the contrary. The trial court did not abuse its discretion in failing to dismiss J.F. pursuant to K.S.A. 22-3410(2)(i).

Brown next alleges the trial court erred in not conducting its voir dire examination of J.F. outside the presence of the jury. Brown's counsel, however, did not object to the voir dire conducted by the trial court or suggest that in camera questioning of J.F. was necessary.

A party may not raise an issue on appeal where no contemporaneous objection was made and where the trial court did not have an opportunity to rule. *State v. Flynn*, 274 Kan. 473, 502, 55 P.3d 324 (2002). The trial court never had an opportunity to consider the validity of this argument and, therefore, potentially correct any errors. Moreover, as a general rule, issues not raised before the trial court may not be raised on appeal. *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003). Finally, Brown has provided only scant, nonspecific case law precedent to support this claim of error. For all these reasons this claim is without merit.

We note, *sua sponte*, that Brown did not challenge J.F. for cause during voir dire pursuant to K.S.A. 22-3410(2)(h), or raise the applicability of this particular subsection on appeal. This subsection allows a juror to be challenged for cause when "[h]e occupies a fiduciary relationship to the defendant or a person alleged to have been injured by the crime or the person on whose complaint the prosecution was instituted." K.S.A. 22-3410(2)(h). No relevant case law has been found which defines a fiduciary relationship as contemplated by K.S.A. 22-3410(2)(h). Kansas appellate courts have discussed the meaning of a "fiduciary relationship" in a variety of contexts, however, resulting in the term being defined by the Kansas Judicial Council as "any relationship of blood, business, friendship or association in which one of the parties places special trust and confidence in the other." PIK Civ. 3d 125.01.

As noted earlier, we do not generally consider matters for which no specific contemporaneous objection is made at trial. Although Brown objected in a general fashion to J.F.'s service on the jury, "a contemporaneous objection must be made and it should be specific enough that the trial judge can rule intelligently upon the objection . . . ." *City of Overland Park v. Cunningham*, 253 Kan. 765, 772, 861 P.2d 1316 (1993).

Brown's failure to state this specific ground for challenging J.F. at the trial level precludes our review because, as a result of this failure, neither counsel nor the trial court questioned J.F. to determine whether his pretrial counseling of Brown established a fiduciary relationship at the time of the encounter and, if so, whether J.F. considered that relationship to exist at the time of trial. Finally, an issue not briefed by the appellant is deemed waived or abandoned. *State v. Holmes*, 278 Kan. 603, 622, 102 P.3d 406 (2004). For all of these reasons this particular issue is not properly before us for consideration.

The failure to excuse a juror for cause is not a ground for reversal unless, as a result, the defendant was prejudiced. *State v. Heath*, 264 Kan. 557, Syl. ¶ 17, 957 P.2d 449 (1998). Although we have found no abuse of discretion in the trial court's ruling, we address Brown's claim that this ruling resulted in prejudice.

Brown speculates: "It is entirely possible in this case that Mr. Brown, who testified at trial, might have wanted to call [J.F.] as a witness to corroborate his own trial testimony." There is nothing in the record to support this conjecture. If true, Brown's counsel was obliged to object upon that specific basis during the voir dire of J.F. *City of Overland Park v. Cunningham*, 253 Kan. 765, 772, 861 P.2d 1316 (1993).

Brown next argues, for the first time on appeal, that the trial court's refusal to strike J.F. from the jury panel violated Brown's constitutional right to remain silent. Brown theorizes that "[i]f he asserted his right to refuse to testify, the other jurors would naturally wonder: Mr. Brown talked about the facts of the case to [J.F.] in jail; why won't he testify at trial?" Brown provides no legal or factual basis to support this allegation of prejudice. As a result, we find it to be without merit.

Finally, in the context of Brown's claims of prejudice, we note he did not use one of his eight peremptory challenges to remove J.F. from the jury panel. This factual scenario has been considered before by our Supreme Court.

In *State v. Mayberry*, 248 Kan. 369, 807 P.2d 86 (1991), our Supreme Court reviewed a case where four prospective jurors were unsuccessfully challenged for cause and actually served on the jury. These individuals were challenged because they had information that the defendant had previously been convicted of murder. The court found the prospective jurors "clearly expressed their ability to disregard outside information. In addition, any error committed by the trial court in failing to discharge the challenged jurors could easily have been cured by Mayberry's use of peremptory challenges." 248 Kan. at 382.

In *State v. Dixon*, 248 Kan. 776, 811 P.2d 1153 (1991), our Supreme Court found the trial court's refusal to strike a juror for cause "questionable" and observed:

"The record does not indicate why the defendant failed to utilize a peremptory challenge as suggested by the trial court to strike Mrs. Moore from the panel. Dixon makes no argument that use of a peremptory challenge on Mrs. Moore would have forced him to accept other objectionable jurors. [Citation omitted.] Under these circumstances, we find no reversible error in the trial court's ruling." 248 Kan. at 790-91.

See *State v. Verge*, 272 Kan. 501, 508-11, 34 P.3d 449 (2001).

Brown attempts to distinguish this case precedent as being factually dissimilar to the present case. We disagree. In *Mayberry*, *Dixon*, and the present case, the defendants' motions to challenge for cause prospective jurors were overruled, the defendants failed to peremptorily challenge the prospective jurors and, as a result, they served as jurors.

For the first time on appeal, Brown asserts "the use of a peremptory strike to remove [J.F.] would have forced him to accept other objectionable jurors." Although the record is devoid of defense counsel's rationale for exercising peremptory challenges at trial, in his brief Brown identifies five prospective jurors who were peremptorily challenged by Brown's counsel. In his brief, Brown cites to answers given by these five individuals during voir dire

wherein they "to some extent, expressed their belief that they could be impartial, but they also expressed some form of bias."

Assuming arguendo that Brown had valid reasons to peremptorily challenge these five individuals, Brown was permitted to exercise eight peremptory challenges. Brown candidly admits that the three remaining peremptorily-challenged prospective jurors "were not individually questioned during voir dire and made no statements." As a result, Brown has failed to make a credible case that the objectionable nature of all eight prospective jurors compelled his counsel not to peremptorily challenge J.F. By not exercising a peremptory challenge against J.F. and not providing a record as to the rationale why he was compelled to exercise the eight peremptory challenges available to him, Brown has failed to make a sufficient case for prejudice which would require reversal of his convictions.

Finally, Brown's claim of prejudice is compromised by the fact that he had actual first-hand knowledge of the content of the pretrial conversation between him and J.F. Unlike the typical situation where defense counsel can only assess a prospective juror's fairness and impartiality based upon answers to voir dire questions, in the present case Brown participated in the conversation with J.F. and, as a result, should have been fully informed as to what he said, what J.F. said, and whether that encounter would favorably or adversely affect Brown's defense. Given these special circumstances, Brown's decision to not peremptorily challenge J.F. implies that Brown did not consider J.F.'s service on the jury to be prejudicial to his defense.

While "[i]t would have been safer" for the trial court to excuse J.F. from jury service on this particular case, given Brown's claims and the record before us, we are unable to find an abuse of discretion by the trial court or prejudice to Brown's defense. See *Dixon*, 248 Kan. at 790.

### Lesser Included Offense Instruction

Brown was charged with involuntary manslaughter while driving under the influence of alcohol and drugs under two alternative theories: his blood alcohol level was .08 or more, or he was under

the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle, in violation of K.S.A. 2004 Supp. 21-3442. Brown was also charged with driving under the influence under two alternative theories: his blood alcohol level was .08 or more (K.S.A. 2004 Supp. 8-1567[a][2]), or he was under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle, K.S.A. 2004 Supp. 8-1567(a)(3).

At trial, the jury was instructed regarding the alternative theories of involuntary manslaughter while driving under the influence but only instructed regarding driving under the influence with a blood alcohol level of .08 or more. Brown was convicted under both alternative theories of involuntary manslaughter while driving under the influence of alcohol and convicted of driving under the influence of alcohol.

On appeal, Brown argues the trial court erred in failing to instruct the jury on driving under the influence of alcohol as a lesser included offense of involuntary manslaughter while driving under the influence of alcohol. At trial, Brown did not request a lesser included offense instruction.

Brown's failure to request this lesser included offense instruction dictates our standard of review:

"No party may assign as error the giving or failure to give an instruction, including a lesser included crime instruction, unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection unless the instruction or the failure to give an instruction is clearly erroneous. The failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that absent the alleged error there was a real possibility the jury would have returned a different verdict." *State v. Boone*, 277 Kan. 208, Syl. ¶ 8, 83 P.3d 195 (2004).

K.S.A. 2004 Supp. 21-3107(2)(b) defines a lesser included crime as "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." In order to resolve this issue, it is necessary to determine if all the elements of driving under the influence of alcohol are identical to some of the elements of involuntary manslaughter while driving under the influence of alcohol.

K.S.A. 2004 Supp. 8-1567(a) provides: "No person shall operate or attempt to operate any vehicle within this state while: (2) the alcohol concentration in the person's blood or breath, as measured within two hours of the time of operating or attempting to operate a vehicle, is .08 or more."

With regard to the driving under the influence of alcohol charge, the jury was instructed in Instruction No. 13 that four claims or elements must be proven:

"1. That the defendant drove or attempted to drive a vehicle;

"2. That the defendant, while driving or attempting to drive, had an alcohol concentration in his blood or breath of .08 or more as measured within two hours of the time of driving or attempting to drive the vehicle;

"3. That the alcohol concentration in the defendant's blood or breath was a result of alcohol consumed before or while driving or attempting to drive a vehicle; and,

"4. That this act occurred on or about the 15th day of April, 2003, in Washington County, Kansas."

K.S.A. 2004 Supp. 21-3442 defines involuntary manslaughter while driving under the influence as "the unintentional killing of a human being committed in the commission of, or attempt to commit, or flight from an act described in K.S.A. 8-1567 and amendments thereto."

In the present case, the jury was instructed in Instruction No. 9 that four claims or elements must be proven by the State in order to convict Brown of involuntary manslaughter while driving under the influence of alcohol:

"To establish this charge, each of the following claims must be proved:

"1. That the defendant unintentionally killed Ruth Brown;

"2. That it was done in the commission of or while attempting to commit the act of operating or attempting to operate a vehicle while having an alcohol concentration in his blood of .08 or more as measured within two hours of the time of operating or attempting to operate the vehicle;

"3. That the alcohol concentration in the defendant's blood or breath was a result of alcohol consumed before or while driving or attempting to drive a vehicle; and,

"4. That this act occurred on or about the 15th day of April, 2003, in Washington County, Kansas."

Alternatively, the jury was instructed in Instruction No. 10 that claims (1), (3), and (4) above must be proven, in addition to the claim that the unintentional killing of Ruth Brown "was done in the commission of or while attempting to commit the act of operating or attempting to operate a vehicle while under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle."

As is readily apparent, all four elements of the offense of driving under the influence of alcohol as set forth in Instruction No. 13 are identical to some of the elements of involuntary manslaughter while driving under the influence of alcohol as set forth in Instruction No. 9. As a result, we hold that pursuant to K.S.A. 2004 Supp. 21-3107(2)(b), driving under the influence of alcohol as provided in K.S.A. 2004 Supp. 8-1567(a)(2) is a lesser included offense of involuntary manslaughter while driving under the influence of alcohol because all of the elements of K.S.A. 2004 Supp. 8-1567(a)(2) are identical to some of the elements of K.S.A. 2004 Supp. 21-3442.

The State acknowledges that driving under the influence of alcohol is a lesser included offense of involuntary manslaughter while driving under the influence of alcohol; however, it argues there is no real possibility the jury would have returned a different verdict absent the instructional error. To resolve this issue, the erroneous instructions must be compared to the instructions the jury would have received had it been correctly instructed and determine if there was a real possibility the jury's verdict was affected by the error. *State v. Winters*, 276 Kan. 34, 39, 72 P.3d 564 (2003).

The trial court's instructions to the jury indicated the involuntary manslaughter charges were charged in the alternative and constituted one crime. With regard to all crimes charged, the trial court instructed:

"Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged."

This instruction was a verbatim recitation of PIK Crim. 3d 68.07.

The jury should have been advised of the lesser included offense, instructed that it could find the defendant guilty of the charged offense, or the lesser included offense, or not guilty, and then instructed: "When there is a reasonable doubt as to which of two or more offenses defendant is guilty, [defendant] may be convicted of the lesser offense only." PIK Crim. 3d 68.09.

A similar situation arose in *State v. Winters*, where the trial court instructed the jury to consider both a severity level 7 aggravated battery and a severity level 4 aggravated battery. The court failed to instruct the jury that the severity level 7 aggravated battery was a lesser included offense of the severity level 4 aggravated battery. The defendant did not object to these instructions or the failure to give a lesser included offense instruction. The *Winters* trial court, like the trial court in this case, gave the multiple counts verdict instruction.

The *Winters* court found the instructions to be error, although not clear error. 276 Kan. at 41. The court reasoned:

"The jury was instructed to consider the crimes separately but in no particular order. We find no basis to conclude that discussing one of the crimes before the other would change the verdict in this case. The jury was instructed to consider the crimes separately and distinctly. Consequently, the verdict on one charge would not affect the verdict on the other charge." 276 Kan. at 40-41.

Brown speculates that "[t]he very real possibility that the jury could have found Mr. Brown guilty of DUI but not guilty of involuntary manslaughter is evidenced by the fact that the court chose to instruct the jury on the proximate cause of Ruth Brown's death." In fact, the court chose to instruct the jury regarding the issue of the proximate cause of Ruth Brown's death because defense counsel requested this instruction. Regardless of the absence of a lesser included offense instruction, the jury was instructed that each charge was to be considered separately, uninfluenced by the jury's decision as to other charges.

As in *Winters*, the jury in this case considered each charge separately and found Brown guilty of both involuntary manslaughter while under the influence of alcohol and driving under the influence of alcohol. We find no basis to conclude that the failure to give a lesser included offense instruction had any effect on any of

the verdicts. Although the jury should have received the lesser included offense instruction, we hold this error was not clear error requiring reversal.

### Multiplicitous Convictions

Brown contends the charges of involuntary manslaughter while driving under the influence of alcohol and driving under the influence of alcohol are multiplicitous under K.S.A. 2004 Supp. 21-3107(2)(b). As a result, Brown contends his involuntary manslaughter conviction should be reversed and the sentence vacated.

The State concedes these charges are multiplicitous. The State argues, however, that only the driving under the influence of alcohol conviction should be reversed and that sentence vacated.

Brown failed to raise this issue before the trial court. Notwithstanding Brown's failure, a claim of multiplicity may be raised for the first time on appeal when necessary to serve the ends of justice and to prevent a denial of fundamental rights. *State v. Groves*, 278 Kan. 302, 303-04, 95 P.3d 95 (2004). Whether charges are multiplicitous is a question of law, and an appellate court's review is unlimited. *State v. Kessler*, 276 Kan. 202, 204, 73 P.3d 761 (2003). We consider this issue because the facts are undisputed, the question of law is clear, and Brown's fundamental constitutional and statutory rights are implicated.

"Multiplicity is the charging of two or more counts in a complaint where only a single wrongful act is involved. [Citation omitted.]" *State v. Stevens*, 278 Kan. 441, 446, 101 P.3d 1190 (2004). "The test to determine whether the charges in a complaint or information are multiplicitous is whether each offense requires proof of an element not necessary to prove the other offense. If so, the charges stemming from a single act are not multiplicitous." 278 Kan. at 447.

As determined earlier, K.S.A. 2004 Supp. 21-3107(2)(b), driving under the influence of alcohol, is a lesser included offense of involuntary manslaughter while driving under the influence of alcohol because all of the elements of K.S.A. 2004 Supp. 8-1567(a)(2) are identical to some of the elements of K.S.A. 2004 Supp. 21-3442. Similarly, to prove the offense of involuntary manslaughter

while under the influence of alcohol requires proof of every element of driving while under the influence of alcohol. As a result, these two charges are multiplicitous.

In cases of multiplicitous charges resulting in convictions, our Supreme Court has determined a defendant should be sentenced only on the more severe offense. *Winters*, 276 Kan. at 43; *State v. Turbeville*, 235 Kan. 993, 995, 686 P.2d 138 (1984); *State v. Garnes*, 229 Kan. 368, 372-74, 624 P.2d 448 (1981). Having determined that the charges are multiplicitous, we reverse Brown's conviction of driving under the influence of alcohol and vacate the sentence.

### Sufficiency of Evidence

Brown contends there was insufficient evidence to convict him of involuntary manslaughter while driving under the influence of alcohol because the State failed to prove Brown's driving under the influence of alcohol was the proximate cause of Ruth Brown's death. Brown asserts Ruth died from a tear in her aorta because of a lack of proper treatment by Dr. Hodgson at Washington County Hospital.

Our standard of review is well known:

"When a defendant challenges the sufficiency of evidence, this court's standard of review is whether, after review of all of the evidence viewed in the light most favorable to the State, the appellate court is convinced that a rational jury could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Mays*, 277 Kan. 359, 377, 85 P.3d 1208 (2004).

Involuntary manslaughter while driving under the influence of alcohol or drugs is defined as "the unintentional killing of a human being committed in the commission of, or attempt to commit, or flight from an act described in K.S.A. 8-1567 [driving under the influence of alcohol or drugs] and amendments thereto." K.S.A. 2004 Supp. 21-3442. There was substantial evidence that Brown was driving the vehicle when the accident occurred and that his blood test revealed a blood alcohol level in excess of the legal limit.

On appeal, Brown concedes that "there was evidence that Ruth Brown was injured as a result of the automobile accident." Brown contends, however, that "[i]f prompt and correct treatment of Ruth Brown would have prevented her death, . . . then the state has

failed to prove that the actions of Mr. Brown were the proximate cause of Ruth Brown's death."

Without addressing the legal propriety of such a defense in this case, Brown's argument is unavailing because a review of the record convinces us there was no competent evidence that Ruth received negligent medical care or that if Ruth had received faster or better treatment she would have survived.

Ruth Brown was treated at Washington County Hospital by a local physician, Dr. David Hodgson. He testified Ruth was conscious and responded to his questions about her injuries in the emergency room. She told him she was uncomfortable on her back and her upper abdomen hurt. Ruth smelled strongly of alcohol and admitted to drinking about six beers over a period of a couple hours.

Attempting to diagnose the cause of Ruth's abdominal pain, numerous x-rays were taken of her spine, chest, and abdominal region. Throughout the process Ruth was uncooperative, resisted examinations, and frustrated medical treatment. Dr. Hodgson examined Ruth and her x-rays and found no evidence of external or internal bleeding, fractures, dislocations, or heart or lung trauma. He admitted Ruth to the hospital for continued observation and care.

At 5:45 a.m. the following morning, nurses advised Dr. Hodgson that Ruth had been awake, was fairly coherent, but was experiencing some discomfort. At 7 a.m., Dr. Hodgson conducted a physical examination of Ruth which revealed no internal bleeding, although he noted Ruth was sleepy. Dr. Hodgson reviewed all the x-rays again without discovering anything of medical significance.

Dr. Hodgson checked on Ruth at 8 a.m. and she appeared sleepy but stable. By 9 a.m., Ruth was no longer moving or responding verbally. Dr. Hodgson and a nurse practitioner reexamined Ruth, took more x-rays, and decided there had been enough change in her neurological status to transfer her to a major trauma center. Ruth was airlifted from the Washington County Hospital around 11 a.m. and arrived at Bryan West Hospital in Lincoln, Nebraska, about 45 minutes later.

Dr. Ronald Jex, a cardiothoracic surgeon, performed a transesophageal echocardiogram to assess Ruth's heart and blood vessels. Ruth was acidotic, meaning her blood chemistry was abnormal because of poor blood flow to parts of her body for at least 4-6 hours. The evaluations supported a diagnosis of an aortic injury. Dr. Jex determined that Ruth's prognosis was poor and even with surgery she might not survive.

Ruth was taken to surgery about 4:00 or 4:30 p.m. Doctors repaired a tear to her aorta and restored normal blood flow. During the procedure Ruth went into cardiac arrest but was revived. Unfortunately, Ruth's condition continued to deteriorate until she died at approximately 9 p.m. on April 16, 2003.

At trial, Dr. Jex testified "without a doubt" that Ruth's injuries were consistent with a high-impact accident. In his opinion, the ultimate cause of death was ischemia and resulting heart failure. He stated the injury took time to develop to the point of cutting off blood flow to the organs. This type of injury is not recognizable until the body starts showing symptoms, and it takes time for the symptoms to manifest. Dr. Jex testified Ruth's condition was rare and that 90 percent of people who receive aortic injuries from high-impact accidents die at the scene.

At trial, neither Dr. Hodgson or Dr. Jex testified regarding any negligent medical treatment by Dr. Hodgson or that, as Brown alleges, "prompt and correct treatment of Ruth Brown would have prevented her death." Significantly, in his case in chief, Brown also failed to present any expert testimony in support of this defense.

We note that at sentencing the trial judge provided his first-hand assessment of Brown's defense and the sufficiency of evidence of Brown's guilt:

"From a legal standpoint, as I mentioned before, there was overwhelming evidence of guilt. There was nothing—the treating physicians, in my view, gave excellent care, far above the minimum requirement. Dr. Hodgson followed this case closely and was personally in attendance much of the time and this was an unusual circumstance. Often in a trauma of this degree the victim patient would have died at the scene and all reasonable care and diagnostic tools were used."

Brown's defense that Dr. Hodgson was negligent and his failure to diagnose the injury caused Brown's wife's death from an oth-

erwise treatable injury was presented to the jury. At the request of the defense, the jury was instructed on proximate cause. Brown's counsel argued his theory in closing argument. After considering the testimony of Dr. Hodgson and Dr. Jex, the jury found Brown's act of driving under the influence of alcohol caused his wife's death. There was no factual basis for this defense in the record, and we are convinced after review of all of the evidence, viewed in the light most favorable to the State, that a rational jury could have found the defendant guilty beyond a reasonable doubt.

## Sentencing

Brown contends the trial court erred in applying the enhanced criminal history scoring provisions of K.S.A. 2002 Supp. 21-4711(c)(2) and sentencing him to 162 months in prison upon his conviction for involuntary manslaughter while driving under the influence of alcohol. Brown's sentence was lengthened as a result of having two prior driving under the influence of alcohol convictions which, pursuant to the trial court's understanding of K.S.A. 2002 Supp. 21-4711(c)(2), counted as person felonies for purposes of calculating Brown's criminal history.

Resolution of this issue requires interpretation of the Kansas Sentencing Guidelines Act, K.S.A. 21-4701 *et seq.*, which is a question of law; therefore, this court's review is unlimited. See *State v. Davis*, 275 Kan. 107, 124, 61 P.3d 701 (2003).

At the outset, the State objects to consideration of this issue for the first time on appeal. The State claims Brown failed to object to his enhanced criminal history category of B and, consequently, may not complain on appeal of an illegal sentence based upon that score. Our Supreme Court has established precedent for granting appellate review of criminal history errors in certain instances despite defense counsel's stipulation or failure to make a proper objection. See *State v. Vandervort*, 276 Kan. 164, 176-77, 72 P.3d 925 (2003).

In the present case Brown was sentenced on January 9, 2004. The Kansas Supreme Court filed its dispositive opinion in *State v. Manbeck*, 277 Kan. 224, 83 P.3d 190 (2004), on January 30, 2004. We consider Brown's claim of error because the question of law is

clear, the facts are undisputed, and our Supreme Court has recognized the authority of appellate courts to review the issue of an illegal sentence for the first time on appeal.

K.S.A. 2002 Supp. 21-4711(c)(2), the law in effect at the time of Brown's offense, applied enhanced scoring to individuals convicted of involuntary manslaughter while driving under the influence of both alcohol and drugs. "Criminal statutes and penalties in effect at the time of a criminal offense are controlling. [Citation omitted.]" *State v. Denney*, 278 Kan. 643, 646, 101 P.3d 1257 (2004). Brown argues that K.S.A. 2002 Supp. 21-4711(c)(2) was improperly applied by the trial court because he was convicted of involuntary manslaughter while driving only under the influence of alcohol, not a combination of alcohol and drugs. This statute has since been amended. See L. 2004, ch. 30, sec. 1.

Brown cites to *Manbeck*, for support. In *Manbeck*, the Kansas Supreme Court held the special sentencing provision of K.S.A. 2002 Supp. 21-4711(c)(2) only applies to convictions for involuntary manslaughter while driving under the influence of both alcohol and drugs. 277 Kan. at 226-29. The State concurs that *Manbeck's* interpretation of K.S.A. 2002 Supp. 21-4711(c)(2) is applicable to the present case. We agree.

Given the statutory language of K.S.A. 2002 Supp. 21-4711(c)(2), as interpreted by the Supreme Court in the *Manbeck* decision, we hold that Brown's two prior driving under the influence of alcohol convictions were improperly scored as two person felonies which resulted in an illegal sentence for involuntary manslaughter while driving under the influence of alcohol. As a result, that sentence is vacated and we remand for resentencing.

Brown's conviction of involuntary manslaughter while driving under the influence of alcohol is affirmed. The sentence is vacated and the case remanded for resentencing. Brown's conviction of driving under the influence of alcohol is reversed and the sentence vacated.

GREENE, J., dissenting: I respectfully dissent because I believe the majority's construction and application of K.S.A. 22-3402 is inconsistent with if not contrary to Kansas authorities and does not

seem logical to me. In summary, I would not count against the defendant for speedy trial purposes the days between the grant of defendant's motion for continuance of trial and the original trial date, because this time frame did not "delay" the trial, and certainly was not the "result of [defendant's] application or fault of the defendant."

For purposes of Brown's speedy trial issue, the central question in this appeal is whether the time frame between the district court's grant of his motion for continuance, August 1, 2003, and the original trial date of August 20, 2003, should be counted against him in determining whether he was brought to trial within the 90 days required by K.S.A. 22-3402(1). The majority has answered this question in the affirmative; I would answer negatively, counting this time frame against the State. The result of my interpretation and application is that, after charging to Brown only the time between the original and the continued trial dates, Brown was brought to trial after 101 days, requiring discharge from further liability under the statute.

Most of the Kansas authorities cited by the majority do not address these circumstances. In *State v. Southard*, 261 Kan. 744, 933 P.2d 730 (1997), and in *City of Dodge City v. Downing*, 257 Kan. 561, 894 P.2d 206 (1995), the issue was time attributable to defendant in connection with a motion to suppress. In *State v. Crane*, 260 Kan. 208, 918 P.2d 1256 (1996), the issue was time attributable to defendant in connection with a motion for independent mental examination. In *State v. Bafford*, 255 Kan. 888, 879 P.2d 613 (1994), the principal issue was time attributable to defendant in connection with a motion for psychiatric evaluation, where defendant disclaims understanding and consent to delay attributable to his counsel. None of these cases specifically address the manner of counting or attributing days for speedy trial purposes where the defendant's motion to continue trial, without associated motion delay, is ruled upon prior to the original trial date. (Although the *Bafford* decision includes a general counting of attributable days, and does not count against the State a 4-day time period between grant of motion and the original trial date, this is no reliable or

controlling ruling because the 4-day period was inconsequential to the 90-day period.)

The more instructive if not controlling Kansas decision is *State v. Hines*, 269 Kan. 698, 7 P.3d 1237 (2000), where our Supreme Court construed and applied a parallel subsection of the statute, K.S.A. 22-3402(3)(c) (now [5][c]). In counting days attributable to a continuance requested by defense counsel (over the strenuous objection of the defendant) on April 16, 1999, the court did *not* include the period of days between the date of request/grant of a continuance and the date of the then pending trial date of April 19, 1999. In so doing, the court expressly noted that "[t]his time is counted under K.S.A. 22-3402(1)." 269 Kan. at 703. Although subsection (3)(c) has language specifically directing that "the original trial date" is the measure for counting days for delay arguably related to a material evidence request by the prosecution, the Supreme Court clearly indicated that 22-3402(1) applied, and the count did not include the period between request/grant of continuance and the pending trial date. With due respect, I am not persuaded by the majority's attempt to distinguish *Hines*.

Even more instructive than *Hines* is the Supreme Court's decision in *State v. White*, 275 Kan. 580, 67 P.3d 138 (2003), where the specific subsection at issue was K.S.A. 22-3402(3)(c) (now [5][c]), the precise subsection at issue in *Hines*. In *White* the specific issue presented was whether the count of days attributable to a continuance for procurement of material evidence by the State should begin to run from the date the district court rules on the motion for continuance or the date the original trial was to begin. The court concluded that the original trial date was the appropriate measure, stating:

"Although not specifically addressing the issue raised by White, on previous occasions when calculating whether a defendant's right to speedy trial has been violated, this court has utilized the trial date as the beginning date for counting. See *State v. Hines*, 269 Kan. 698, 703, 7 P.3d 1237 (2000); *State v. Green*, 254 Kan. 669, 672, 867 P.2d 366 (1994). Further, in reading the provisions as a whole, the legislative intent is clear that the trial date is to be the date from which the continuance is calculated."

In light of both *Hines* and *White*, I would argue that the Supreme Court has indicated that the entirety of K.S.A. 22-3402 be con-

strued with consistency as to the use of original trial date as the operative date for counting days attributable to a defendant's motion for continuance, even though it is ruled upon in advance of said date. Not only does *Hines* relate subsections (1) and (3)(c) (now[5][c]), the legislature amended the statute in 2004 adding subsection (3) which specifically requires that trial be rescheduled "within 90 days of the original trial deadline." Repeated express utilization of the original trial date as the operative date indicates a legislative intent to construe the statute with consistency, thus requiring that original trial date be utilized in attributing delay. I simply cannot construe the statute and the applicable case law to support the construction and application endorsed by the majority.

Consider again the express language of the statute: a defendant must be brought to trial within 90 days after arraignment "unless the delay shall happen as a result of the application or fault of the defendant . . . ." If the original trial date was August 20, 2003, how can the majority imply that "delay" occurred prior to that date? Moreover, how can the majority imply that the period between motion/grant of continuance and the original trial date "result" from the defendant's application or other "fault." It is clear to me that Brown could not be tried *prior to* the original trial date; had he not sought a continuance, the entire period would be attributable to the State. The majority, however, concludes that the filing of a continuance not only requires attribution to the defendant of the time between the original and new trial dates, it requires attribution to the defendant of the additional time transpiring prior to the original trial date, counted from the grant of a continuance. This attribution is counterintuitive in that it causes a time period already attributed to the State to magically "jump back" to the defendant for purposes of attribution. Obviously, this period does not result from the application or any other fault of the defendant; it already has been counted against the State, does not "result" from the defendant's motion, and should remain attributable to the State. With due respect to the majority, this magical "jump back" does not seem logical but rather contrary to a coherent construction of the entirety of K.S.A. 22-3402.

Finally, I believe that it should be apparent that the appropriate methodology for counting days under these circumstances presents a difficult, if not rather esoteric, question. Inasmuch as the right to a speedy trial is rooted not only in Kansas statute, but is also a fundamental right acknowledged in the Kansas and United States Constitutions, I would argue that such difficult or esoteric questions should be resolved in favor of the defendant, not in favor of the State.

I would reverse the district court, holding that Brown was not brought to trial within the period required by K.S.A. 22-3402 and ordering that he be discharged from further liability for the crimes charged.